IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANE DOE and JOHN DOE<br>   As Parents and Guardian of<br>   CHILD DOE, a Minor,<br><br>        Plaintiffs,<br><br>       v.<br><br>STEUBENVILLE POLICE<br>   DEPARTMENT, *et al.*,<br><br>        Defendants. | Case No. 2:16-cv-625<br><br>JUDGE ALGENON L. MARBLEY<br><br>Magistrate Judge Kemp |

## OPINION & ORDER

This matter comes before the Court on Defendant Sandy Richey's motion to dismiss the plaintiffs' first amended complaint. (Doc. 20).[1] Richey argues that Count I, brought under 42 U.S.C. § 1983, must be dismissed because she was not acting under color of law when the plaintiffs' autistic son allegedly was harassed and discriminated against. Richey argues that the Court should decline to exercise its supplemental jurisdiction over the remaining state-law claims (Counts V through IX) in the interest of judicial efficiency. As explained below, however, the plaintiffs plausibly pleaded a conspiracy, or concerted action, between Richey and members of the Steubenville Police Department. Thus, although Richey was not a "state actor" in the strictest sense, the first amended complaint plausibly alleges that she was acting under color of law for Section 1983 purposes. The Court, therefore, **DENIES** Richey's motion to dismiss in its entirety.

---

[1] Not all counts name Richey as a defendant. Accordingly, Richey seeks to dismiss only the following claims: Count I (Fourteenth-Amendment claim brought under 42 U.S.C. § 1983); Count V (Intentional Infliction of Emotional Distress claim brought under Ohio law); Count VI (Nuisance and Harassment claim brought under Ohio law); Count VII (Intentional Trespass claim brought under Ohio law); Count VIII (Invasion of Privacy claim brought under Ohio law); and Count IX (Civil Conspiracy claim brought under Ohio law).

1

# I. BACKGROUND

## A. Factual Background[2]

The plaintiffs, Jane and John Doe, filed suit against the Steubenville Police Department, the City of Steubenville, Steubenville Police Chief William A. McCafferty, Police Captain John Young, and Captain Young's friend, Sandy Richey. The plaintiffs allege that the defendants conspired to deprive them and their son, "Child Doe," a special needs child, of rights protected by the United States Constitution, federal statutes, and the common laws of the State of Ohio.

More specifically, the plaintiffs allege that their son, who has been diagnosed with "Asperger's Disorder," repeatedly was threatened with sexual assault and harassed by Defendant Sandy Richey (who lived next door to the plaintiffs) and her relatives, neighbors, and/or friends. During one incident, which the plaintiffs describe as the "turning point" in an ongoing course of threats, intimidation, and assault—Richey's relatives, friends, and neighbors allegedly struck the plaintiff's son, forced him to pull down his pants, and then stood by while one of the assailants removed his own pants and placed his penis in or near the boy's mouth. (First Am. Compl., Sealed Doc. 17, PageID 127).

The plaintiffs reported this sexual assault to Children's Services, which conducted an investigation into the matter. The plaintiffs maintain that, following their report of the assault to Children's Services, Richey, her relatives (who also lived next door to the plaintiffs), and her neighbors and/or friends continued to harass the plaintiffs and their son in retaliation. The plaintiffs also allege that, following the report to Children's Services, Richey received assurances from Captain Young, a friend who worked for the Steubenville Police Department, that the police department "would not meaningfully prosecute her." (*Id.* at PageID 129).

---

[2] In adjudicating this motion to dismiss, the Court accepts as true all well-pleaded factual allegations from the first amended complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Following receipt of these assurances from Captain Young, Richey allegedly continued on a course of intimidation, harassment, and harm to the plaintiffs and their son, including the following:

(1) Continuing to encourage and facilitate the ongoing abuse of [their son];

(2) Encouraging and engaging a neighborhood youth to come to the plaintiffs' property and use loud and vulgar language, as well as to threaten the plaintiffs' family members;

(3) Verbally threatening and harassing the plaintiffs' family members and making explicit threatening statements;

(4) Polluting the plaintiffs' property with pool water;

(5) Making vulgar and profane comments to the plaintiffs' children, who became afraid to play in their yard;

(6) Trespassing and damaging the fence line between Richey's property and the plaintiffs' property; and

(7) Approaching the plaintiffs' family members in a menacing and aggressive manner.

(*Id.*).

Matters came to a head in May 2014, when the plaintiffs filed a petition for a civil stalking protection order against Richey and others in the Jefferson County Court of Common Pleas.[3] (*See* Pet., Doc. 17-1). On June 11, 2014, the Court of Common Pleas issued an interim protection order, effective until May 30, 2019, that barred all contact between Richey and the plaintiffs' children, among other prohibitions. (*Id.* at PageID 164-68). The Court sent a copy of the protection order to the Steubenville Police Department and also scheduled a hearing for the underlying petition for June 30, 2014. (*Id.*).

---

[3] John Doe also sent an email to the City of Steubenville and the Steubenville Police Department, "specifically outlining that [his son] had Asperger's [S]yndrome[,] which is on the spectrum of autism[,] and was being continuously bullied and harassed by Defendant Richey, her relatives, neighbors, and/or friends of her family." (Doc. 17, PageID 130).

At the June 30 Hearing, the Court of Common Pleas inquired about matters and became aware of an agreed-upon "No Contact Order" that the parties had reached. After confirming that the agreed-upon "No Contact Order" would protect the plaintiffs' autistic son, the court entered the order. (*See* Prot. Order, Doc. 17-2 [docketed on Aug. 25, 2014]).

The "No Contact Order" did not resolve matters, however. Instead, Richey, who allegedly felt "secure in her belief based on her friendship with [Captain] Young and his reassuring comments to her that the Order could be ignored with impunity," continued to harass and intimidate the plaintiffs and their family. (Doc. 17, PageID 131). That conduct included one incident on July 4, 2014, when Richey tried to intimidate the plaintiffs' son outside their home, resulting in "a severe mental breakdown as the result of his disability." (*Id.* at PageID 131-32). That conduct also included another incident on July 29, 2014, when Richey again tried to intimidate the plaintiffs' son as he and his family returned to their home from a waterpark. (*Id.* at PageID 132). And that conduct continued well after the "No Contact Order" was docketed—including altercations or attempted harassment and intimidation on November 7, 2014; April 3, 2015; and June 5-6, 2015. (*Id.* at PageID 132-33).

The plaintiffs contend that they reported each of these events, which violated the court's "No Contract Order," to the Steubenville Police Department "in detail." (*Id.* at PageID 132). Yet the police department "refused to enforce the provisions of the order." (*Id.*). Rather, the plaintiffs allege that the City of Steubenville, the Steubenville Police Department, and Captain Young continued to "discriminat[e] against Plaintiffs and their family due to their bias against individuals with . . . disabilities, deliberate indifference to how the harassment affected [Plaintiffs' son], and favoritism toward [Captain] Young's friend, Defendant Richey, who had been encouraged to believe she could harass with impunity." (*Id.* at PageID 133).

The plaintiffs likewise contend that, as a result of this continued harassment—which has resulted in "physical and psychological harm" to their family—they were forced to move away from their residence (and from Richey's proximity). (*Id.* at PageID 133-34). The plaintiffs allege that they moved and first took up residence with Jane Doe's mother-in-law instead. Richey, however, was not finished with the plaintiffs. The plaintiffs maintain that, after they moved from their home, representatives of the Steubenville Police Department provided the location of Jane Doe's mother-in-law's home and the fact of their relocation to Richey "for the purpose of permitting [her] to travel to the home to intimidate Plaintiffs' family and terrify [their son]." (*Id.* at PageID 134).

Upon learning of the plaintiffs' new location, Richey followed Jane Doe and a co-worker in an effort "to force her vehicle off the road and intimidate her." (*Id.*). The plaintiffs reported this incident to the Steubenville Police Department, but they allege that, "as in the usual course of reports of harassment made by Plaintiffs, the report was effectively ignored by [the police]." *Id.* Ultimately, the plaintiffs moved out of Ohio altogether as a result of this purported road rage and inaction from the Steubenville Police Department, as well as the department's general unwillingness to put a stop to the harassment. (*Id.* at PageID 133-35).

### B. Procedural Background

After moving from Steubenville, the plaintiffs filed this Section 1983 lawsuit against the Steubenville Police Department, the City of Steubenville, Police Chief McCafferty, Captain Young, and Richey, alleging various violations of the Constitution, federal statutes, and Ohio common law. (Compl., Sealed Doc. 3). The plaintiffs later obtained permission to file and filed their first amended complaint—the operative complaint for purposes of this motion to dismiss. (Order, Doc. 10; First Am. Compl., Sealed Doc. 17).

On November 23, 2016, Richey filed a motion to dismiss the first amended complaint, arguing that she is not liable under § 1983 because she is not a state actor and that this Court should decline to exercise its supplemental jurisdiction over the remaining state-law claims. (Mot. to Dismiss, Doc. 20).[4] The plaintiffs filed a response in opposition (Doc. 24), to which Richey replied (Doc. 28). The matter is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Richey moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under modern federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

---

[4] Richey previously filed a motion to dismiss the original complaint as well. (Mot. to Dismiss, Doc. 11). The Court **DENIES** that motion as moot in light of the first amended complaint and Richey's subsequent motion to dismiss.

## III. ANALYSIS

Richey's motion to dismiss turns on a single question: whether the first amended complaint plausibly alleges that Richey was acting under color of law when she engaged in or encouraged the harassment, intimidation, and discrimination detailed above. If so, then the plaintiffs' action may proceed against her. If not, then the Court must dismiss her from Count I and consider whether to exercise its supplemental jurisdiction over the remaining state-law claims. As explained below, the first amended complaint *does* plausibly allege that Richey was acting under color of law, because it alleges that she conspired and acted in concert with state officials to deprive the plaintiffs and their son of federal constitutional and statutory rights. Therefore, the Court must **DENY** her motion to dismiss.

### A. Section 1983 Applies Only to Individuals Acting Under Color of State Law.

The plaintiffs brought Count I, which alleges that Richey and others violated the Fourteenth Amendment, under § 1983. Section 1983 imposes liability on "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage of any State*," deprives a citizen of rights secured by the United States Constitution and federal laws. 42 U.S.C. § 1983 (emphasis added). To state a claim under § 1983, a plaintiff must allege both a deprivation of a federal right *and* that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). This second requirement is known as the "state action doctrine," and it reflects our longstanding view that the Constitution generally does not apply to the conduct of private parties. *See id.* at 49; *see also, e.g.*, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances . . . ."); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989) (similar).

7

### B. Private Parties May Act Under Color of Law by Conspiring with State Officials to Deprive Others of Federally-Protected Rights.

Although the Constitution ordinarily does not reach the conduct of private parties, there are exceptions to the rule. One of those exceptions occurs when there are allegations "of cooperation or concerted action between state and private actors." *Memphis, Tenn Area Local Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004); *see also Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980) ("Private persons, jointly engaged with state officials in the challenged actions, are acting . . . 'under color' of law for purposes of § 1983 actions."). Thus, when "a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000); *see also Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) (holding that individuals who conspire with state officials to deprive individuals of their federally-protected rights may be found to have acted under color of state law for purposes of § 1983 liability).

The standard for proving a civil conspiracy and, thus, for alleging that a private party acted under color of law for § 1983 purposes, is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Memphis Postal Workers Union*, 361 F.3d at 905 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)); *accord Revis v. Meldrum*, 489 F.3d 273, 290-91 (6th Cir. 2007) (establishing elements of civil conspiracy giving rise to § 1983 liability for private persons).

### C. The First Amended Complaint Plausibly Alleges a Civil Conspiracy.

As explained below, the first amended complaint plausibly alleges a civil conspiracy between Richey and members of the Steubenville Police Department. As such, the first amended complaint alleges that Richey acted under color of law for § 1983 purposes, thereby defeating her motion to dismiss.

The first amended complaint explicitly details the alleged conspiracy, expressly labels Richey and Captain Young as co-conspirators, and contains a stand-alone count for civil conspiracy. For example, in framing their complaint, the plaintiffs allege that Richey "acted in conspiracy with one or more public entities or officers to deprive Plaintiffs' special needs child and his family of [protected] rights." (Doc. 17, PageID 125, ¶ 6). They also allege that the defendants "acted in concert to facilitate Defendant Richey's harassment by preventing meaningful prosecution and providing her information [about their whereabouts], thereby aiding and abetting her effort to banish Plaintiffs from the vicinity." (*Id.* at PageID 134, ¶ 62). The first amended complaint goes on to allege that "Richey was acting in the position of a State Actor, because she acted in coordination with the [Steubenville Police Department] to continuously harass the [plaintiffs' son]." (*Id.* at ¶ 63). The plaintiffs likewise allege that "[t]he close connection between Richey and the [police department] included the provision of information to Richey with the specific intent to permit and facilitate Richey contacting and harassing the CHILD, based on the CHILD'S disability." (*Id.* at PageID 135, ¶ 64). The plaintiffs, moreover, allege that "[t]he close relationship between the [police department] and Richey transformed Richey from a private citizen to a State Actor," and that "Richey willingly participated with the [department] and indeed used her relationship with [department] personnel to jointly conspire to harass the CHILD and discriminate against the CHILD." (*Id.* at ¶¶ 65-66).

On the facts alleged, the plaintiffs' § 1983 claim against Richey is plausible. Having been assured by her "known close personal friend," Captain Young, that the police "would not meaningfully prosecute her, [she] engaged in [a] course of conduct with the specific intent to intimidate, harass, and harm the Plaintiffs and their family." (Doc. 17, PageID 129, ¶ 28). Even after the plaintiffs secured a civil protection order, Richey's intimidation increased "based on her friendship with [Captain] Young and his reassuring comments to her that the Order could be ignored with impunity." (*Id.* at PageID 131, ¶ 40). Although the plaintiffs reported each violation of the civil protection order to the Steubenville Police Department, no meaningful action was taken against Richey. (*Id.* at PageID 132, ¶ 50; *see also id.* at PageID 135, ¶ 69 ("These incidents were reported to [the Steubenville Police], but [the department] took no action as part of the conspiracy to violate the rights of [the plaintiffs' son] and his family.")).

The conspiracy purportedly enabled Richey and her harassment. For example, the plaintiffs allege that "[r]epresentatives of [the Steubenville Police Department] provided the location of [Jane Doe's] mother-in-law's home and the fact of [her son's] relocation to Defendant Richey for the purpose of permitting [her] to travel to the home to intimidate Plaintiffs' family and terrify [their son]." (*Id.* at PageID 134, ¶ 59).

And the first amended complaint also alleges the motive for this conspiracy: "Defendants, acting in concert, have engaged in the above-referenced misconduct . . . to harm Plaintiffs, prevent them from the use and enjoyment of their property, and banish a child with disabilities and his family from the vicinity *because of Defendant Richey's bias against [the son] and efforts by Plaintiffs to prevent her harassment*." (*Id.* at PageID 133, ¶ 51 (emphasis added)). Ultimately, the conspiracy allegedly succeeded: "Plaintiffs . . . moved to another state" to avoid Richey's harassment. (*Id.* at PageID 135, ¶ 68).

Taken together, these allegations satisfy the elements of a civil conspiracy. The plaintiffs alleged that a single plan existed; that the conspirators shared in the general conspiratorial objective; and that an overt act was committed in furtherance of the conspiracy that caused injury. Accordingly, the first amended complaint plausibly alleges that Richey was acting under color of law for § 1983 purposes and, if believed, states a claim against Richey for which relief could be granted. *See Memphis Postal Workers Union*, 361 F.3d at 905.

Against this backdrop, Richey points to a pair of cases addressing the state-action doctrine for § 1983 liability at the summary judgment stage to suggest that the first amended complaint falls short. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970) (reversing grant of summary judgment to private-party defendant); *Wilkerson v. Warner*, 545 F. App'x 413, 420-22 (6th Cir. 2013) (affirming grant of summary judgment to private-party defendant). But those cases are inapposite, because they addressed whether a genuine dispute of material fact remained over the existence of the alleged conspiracy following discovery. This case, on the other hand, has not progressed so far. Richey will have an opportunity to contest the plaintiffs' claims in a motion for summary judgment. For now, the Court's sole task is determining whether "it appears beyond doubt that the plaintiff[s] can prove *no* set of facts in support of [their] claim which would entitle [them] to relief." *Guzman*, 679 F.3d at 429 (emphasis added). As discussed above, Richey has fallen short in making this showing.

Richey also cites *Tahfs v. Protcor*, where the Sixth Circuit affirmed the dismissal of a § 1983 suit because the plaintiff failed plausibly to allege state action on the defendants' behalf. 316 F.3d 584, 593(6th Cir. 2003) ("Because the plaintiffs' complaint does not plead facts, which, if proved, would show the Proctors to be state actors for purposes of § 1983, the district court properly dismissed Tahfs's complaint.").

Here again, Richey's authority is inapposite.  In *Tahfs*, the complaint failed because it alleged only corrupt *outcomes* in a series of decisions rendered by a state court—not corrupt *actions* taken by the private-party defendants and court personnel.  *Id.* at 591-92 ("Tahfs's general allegations of corruption fail to satisfy even the minimal notice pleading requirements of the Federal Rules of Civil Procedure.").  Indeed, unlike in this case, the plaintiff in *Tahfs* failed to "identif[y] the state court actors with whom the [defendants] allegedly conspired, other than to designate them as . . . Court staff members."  *Id.* at 592.  Under the circumstances, the Sixth Circuit was convinced "that under no set of circumstances could Tahfs demonstrate, by the allegations made in her complaint, that staff members of the Wayne County Circuit Court undertook corrupt action in partnership with the [defendants]."  *Id.*  Here, in contrast, the plaintiffs have identified both the state officials with whom Richey allegedly conspired (Captain Young, acting as an agent for the Steubenville Police Department) *and* the allegedly conspiratorial actions that Richey and Young took to deprive the plaintiffs of their federally protected rights (refusing to enforce lawful court orders, providing sensitive police information to Richey, etc.).  This simply is not a case of a bare-bones complaint, like in *Tahfs*.  As such, the Court declines to dismiss Count I against Richey.

**D.  The Court Will Exercise its Supplemental Jurisdiction over the Remaining Claims.**

Having declined to dismiss the plaintiffs' § 1983 claim against Richey, the Court also declines to dismiss the remaining state-law claims against her (Counts V through IX).  The statute governing supplemental jurisdiction provides that, in federal-question cases like this, "the district courts *shall* have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy," unless one of four exceptions applies.  28 U.S.C. § 1367(a) (emphasis added).

Those exceptions, enumerated in § 1367(c), do not apply here, because the remaining state-law claims are not novel or complex; they do not predominate over Count I; the Court did not dismiss Count I; and there are no other "exceptional circumstances" favoring a decline of jurisdiction. *Id.* § 1367(c)(1)-(4). Accordingly, the Court will retain jurisdiction over Counts V through IX against Richey too.

## **CONCLUSION**

For these reasons, the Court **DENIES** Richey's motion to dismiss the first amended complaint (Doc. 20) and **DENIES AS MOOT** her previous motion to dismiss (Doc. 11).

**IT IS SO ORDERED.**

    **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: May 1, 2017**